# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DOUGLAS LITTLEJOHN,

        Plaintiff,

    v.

VIVINT SOLAR,

        Defendant.

1:16-cv-9446-NLH-JS

**OPINION**

---

**APPEARANCES:**

ANDREW M. MILZ
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

CARY L. FLITTER
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NEW JERSEY 08003

    *Attorneys for Plaintiff.*

DANIEL J.T. MCKENNA
BALLARD SPAHR LLP
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NEW JERSEY 08002-1163

JENNY NICOLE PERKINS
BALLARD SPAHR LLP
1735 MARKET STREET

51ST FLOOR
PHILADELPHIA, PENNSYLVANIA 19103

WILLIAM PATRICK REILEY
BALLARD SPAHR LLP
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NEW JERSEY 08002

    *Attorneys for Defendant.*

**HILLMAN**, District Judge

    This Fair Credit Reporting Act ("FCRA") matter comes before the Court on Defendant Vivint Solar's ("Defendant") motion for summary judgment (ECF No. 75) and Defendant's motion to strike certain supplemental facts submitted by Plaintiff in opposition to Defendant's motion for summary judgment (ECF No. 87).[1] Plaintiff Douglas Littlejohn ("Plaintiff") alleges Defendant violated the FCRA, 15 U.S.C. § 1681 *et seq.*, when it accessed his consumer credit report without a permissible purpose. Defendant argues it had a permissible purpose for obtaining Plaintiff's consumer credit report under the FCRA.  For the reasons that follow, Defendant's motion to strike will be granted and Defendant's motion for summary judgment will be denied.

---

[1] A third motion, Defendant's motion to preclude the expert testimony of Plaintiff's putative expert, Evan Hendricks (ECF No. 76) will be addressed in a separate Opinion and Order.

## BACKGROUND

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a). Disputes of material fact are prevalent in this action, and they are noted where relevant.

Defendant sells solar panels. (ECF No. 75-2 ("Def. SOMF") at ¶2). On either March 14 of 15, 2016, Phillip R. Chamberlain ("Chamberlain"), then a sales representative for Defendant, was visiting the home of one of Plaintiff's neighbors when he observed Plaintiff arrive home. (Def. SOMF at ¶¶3, 7). Chamberlain approached Plaintiff to gauge his interest in purchasing a solar panel system from Defendant. See (Def. SOMF at ¶7). What happens after Chamberlain approached Plaintiff's home remains fiercely disputed by the parties.

According to Plaintiff, Chamberlain approached Plaintiff's home and the two had a brief, thirty-second conversation through Plaintiff's partially opened front door. (Def. SOMF at ¶9; ECF No. 82-1 at ¶9).[2]  Plaintiff explained he was busy, was unable to

---

[2] Plaintiff's papers in opposition to Defendant's motion for summary judgment (ECF No. 82) are filed under temporary seal. The Clerk advised Plaintiff that "pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed[.]" ECF No. 82. Plaintiff has not moved to seal Docket Entry Number 82. Similarly, Defendant has filed various exhibits to its motions under seal without moving to have them permanently sealed. See ECF No. 76-3 and 76-4.

talk, and informed Chamberlain he could leave further information in Plaintiff's mailbox.  (ECF No. 82-1 at ¶9).  Plaintiff told Chamberlain he could return over the weekend if he wanted to continue the discussion.  (Id.).  According to Plaintiff and his family, that is where the conversation ends.

Chamberlain tells a dramatically different story.  According to Chamberlain, the conversation was longer and more substantial than Plaintiff describes.  See (ECF No. 75-3 at 16).  Chamberlain says he went over the solar program with Plaintiff and Plaintiff expressed interest in receiving credit approval for a solar panel system.  (Id.).  Chamberlain discussed the requirements for pre-approval with Plaintiff, which included the completion of a form Defendant calls a Prospective Customer Consent Form ("PCCF").  The PCCF required Plaintiff to review or share certain personal information and sign his name authorizing Defendant to obtain his consumer credit report.  Chamberlain explains that he presented Plaintiff with an iPad containing the

---

While it is within the Court's authority to restrict public access to information under certain limited circumstances, it is well-settled that there is a "common law public right of access to judicial proceedings and records."  See In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001).  The Court expects any motion to seal these documents will be filed within fourteen (14) days of this Opinion.  The parties' election not to file such a motion will result in the materials currently filed under temporary seal being unsealed.

PCCF in electronic form, which Plaintiff electronically signed.[3] (Id.; Def. SOMF at ¶23).  Thereafter, Chamberlain left Plaintiff's home and left additional information in Plaintiff's mailbox.

Shortly after Chamberlain's meeting with Plaintiff, Chamberlain uploaded the PCCF allegedly baring Plaintiff's electronic signature to Defendant's main system.  See (Def. SOMF at ¶11).  Because Defendant possessed a PCCF purporting to contain Plaintiff's signature, on March 15, 2016, Defendant accessed Plaintiff's consumer credit report to determine whether Plaintiff qualified for financing related to the purchase of solar panels.  (Def. SOMF at ¶¶11-12).  Plaintiff received notification of this credit inquiry from a credit monitoring service he maintained, and on March 26, 2016 and March 28, 2016, he contacted Defendant to question the credit search.  (Def. SOMF at ¶21).  Defendant represented it had a completed PCCF authorizing it to conduct the inquiry it made.  Plaintiff explained he never consented to such an inquiry, never completed a PCCF, and was never presented with an iPad by Chamberlain.

After Defendant's inquiry, Plaintiff alleges he began suffering from various forms of emotional and physical distress.

---

[3] Notably, the PCCF at issue reveals only Plaintiff's typed-out name on the signature line as opposed to a signature in Plaintiff's handwriting.

Most prominently, Plaintiff alleges his blood pressure increased and he had difficulty sleeping.

On December 22, 2016, Plaintiff filed this action. After close of discovery, on June 3, 2019, Defendant filed its motion for summary judgment (ECF No. 75). After briefing on that motion had concluded, on February 18, 2020, Plaintiff filed supplemental facts in support of his opposition to Defendant's motion for summary judgment. (ECF No. 86). On March 4, 2020, Defendant moved to strike Plaintiff's supplemental filing. (ECF No. 87). Both motions have been fully briefed and are ripe for adjudication.

<u>DISCUSSION</u>

**I.   Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**II.  Defendant's Motion To Strike Plaintiff's Supplemental Filing Will Be Granted And The Supplemental Material Will Not Be Considered In Deciding Defendant's Motion For Summary Judgment**

Before reaching the merits of Defendant's motion for summary judgment, the Court must resolve the parties' dispute regarding the appropriate scope of the factual record. On February 18, 2020, Plaintiff filed a supplemental statement of disputed material facts in support of his opposition to Defendant's motion for summary judgment. (ECF No. 86). Those

supplemental facts are:

>      33. At the time Vivint Solar was receiving
> consumer complaints of fraud, forgery and
> impermissible credit pulls by Chamberlain in 2016 –
> 2017, the company was aware that impermissible credit
> pulls and bogus emails were a "big" problem and a
> "systemic issue."
>
>      34. Vivint was alerted to the "big" and
> "systemic" problem of impermissible credit pulls and
> the use of bogus email addresses in January 2017, at
> the latest, by a financing partner named Solar Mosaic,
> Inc.  Solar Mosaic is Vivint's co-defendant in a
> matter in a matter styled Cardona and Brown v. Vivint
> Solar, U.S.D.C. M.D. Fla. No. 8:18-cv-02838-SCB-JSS,
> and turned over scores of email communications with
> Vivint as ordered by the Middle District of Florida.
>
>      35. The consumer Plaintiffs in Cardona allege
> their signatures were forged by Vivint salesmen and
> their credit was pulled without their consent in
> January 2017 and September 2017, respectively.
>
>      36. As of January 2017, Vivint was aware of
> between 87 and 152 such "incidents" with Mosaic
> accounts in Florida alone.

(ECF No. 86 at ¶¶33-36) (internal citations omitted).  To
support these factual assertions, Plaintiff relies on material
produced in another matter involving Defendant, Brown v. Vivint
Solar, No. 8:18-cv-02838-SCB-JSS (M.D. Fla.) (the "Brown
Documents").  Plaintiff represents this material was unavailable
to him at an earlier time as the information first surfaced
during the exchange of discovery in the Brown action.[4]

---

[4] Plaintiff's counsel is counsel to the plaintiffs in Brown,
which may explain how Plaintiff came to learn of the Brown
Documents.

Defendant argues that Plaintiff's supplemental statement of disputed material fact should be stricken from the record because (1) it violates Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure; (2) the material is beyond the scope of discovery; (3) Plaintiff's use of the Brown Documents in this case violates a confidentiality order entered in Brown; and (4) the documents Plaintiff relies on do not support the supplemental facts he advances.  (ECF No. 87-2).

Plaintiff argues that the newly discovered evidence should be considered part of the record.  (ECF No. 88 at 2).  Plaintiff argues that (1) the newly discovered evidence is within the scope of discovery; (2) confidentiality designations in Brown cannot prevent Plaintiff from using the Brown Documents in this case; and (3) the supplemental statements of material fact are relevant and therefore should be considered in deciding Defendant's motion for summary judgment.  (ECF No. 88).  The Court disagrees with Plaintiff's positions.

A. <u>The Supplemental Material Will Not Be Considered In Deciding Defendant's Motion For Summary Judgment As It Is Not Temporally Relevant To The Claims At Issue</u>

A party asserting the existence of a disputed material fact at the summary judgment stage must support that statement by citation to material in the record.  Fed. R. Civ. P. 56(c)(1)(A).  A fact is material if, under the governing

substantive law, a dispute about the fact might affect the outcome of the suit.  Armano v. Martin, 157 F. Supp. 3d 392, 400 (D.N.J. 2016), aff'd, 703 F. App'x 111 (3d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Setting aside Rule 56's requirement that the support material be in the record, the Court finds that (1) in large part, Plaintiff's proffered statements are not relevant to this action, and (2) the documentation Plaintiff relies upon in advancing those proffered statements do not support the positions he advances.

Plaintiff suggests the supplemental facts are relevant to whether Defendant knew of Chamberlain's fraudulent practices before the incident involving Plaintiff occurred.  However, most of Plaintiff's proffered factual statements refer to information known first to Defendant in 2017, after Plaintiff filed this action and after the incident with Plaintiff occurred. Paragraph 33 is the only exception.  In paragraph 33, Plaintiff suggests Defendant had certain knowledge in 2016.  Plaintiff's citation to the record, however, does not support that assertion.  Instead, the source cited is an email chain, the oldest email in which is dated January 6, 2017.  While the communications describe behavior occurring before that date, they do not specify when that conduct occurred, or when

Defendant first became aware of it.  Therefore, the document relied upon by Plaintiff does not support Plaintiff's proposition that Defendant knew of Chamberlain's actions before the incident with Plaintiff occurred.

Because these supplemental facts and the material Plaintiff relies upon to support them are not temporally relevant to Defendant's motion for summary judgment – or in other words, they do not tend to prove Defendant had knowledge of Chamberlain's actions before the incident involving Plaintiff occurred – they will not be considered by the Court in deciding Defendant's motion for summary judgment and will be stricken from the record.  For this reason, the Court need not address the remainder of the parties' arguments on this issue.[5]

---

[5] The Court recognizes that the Brown Documents are the subject of a protective order entered by the United States District Court for the Middle District of Florida.  See ECF No. 90-1. While the Court declines to consider the Brown Documents for reasons other than application of that protective order, the Court recognizes the court in Brown found that "Plaintiffs, who seek to use the discovery in collateral litigation, have not established a basis for doing so at this time."  ECF No. 90-1 at 7.  Such would also support this Court's decision not to consider the Brown Documents.

**III. Defendant's Motion For Summary Judgment**

a. <u>Legal Standard</u>

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by []showing[]--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will

bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 257.

      b. <u>Defendant's Motion For Summary Judgment Must Be Denied</u>

     Defendant advances three arguments in support of its motion for a favorable judgment, two of which are so intertwined that they will be addressed together.  Defendant argues it had a permissible purpose (or at least a good faith, reasonable belief that a permissible purpose existed) for obtaining Plaintiff's credit report.  Therefore, Defendant argues it did not violate the FCRA, either negligently or willfully.  Additionally, Defendant argues Plaintiff cannot establish harm or damages resulting from Defendant's actions.  Judgement as a matter of law on these issues, the Court finds, would not be appropriate at this juncture.

      1. <u>The FCRA's Permissible Purpose Standard & Applicable Legal Framework</u>

    "Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205-06, 167 L. Ed.

2d 1045 (2007) (citing 15 U.S.C. § 1681; TRW Inc. v. Andrews,
534 U.S. 19, 23, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)).  To
achieve this end, the FCRA regulates the use of consumer reports
and prohibits using or obtaining a consumer report for any
impermissible purpose.  15 U.S.C. § 1681b(f); Spokeo, Inc. v.
Robins, 136 S. Ct. 1540, 1545, 194 L. Ed. 2d 635, 641 (2016)
(citing 15 U.S.C. §§ 1681a(d)(1)(A)-(C); 15 U.S.C. § 1681b).
The FCRA lists uses it deems permissible, two of which are
relevant to this action.  First, the FCRA permits use of
consumer credit reports "in connection with a credit transaction
involving the consumer on whom the information is to be
furnished and involving the extension of credit to . . . the
consumer[.]"  15 U.S.C. § 1681b(a)(3)(A).  Second, a consumer
report may be obtained if the user "otherwise has a legitimate
business need for the information" in connection with a business
transaction that is "initiated by the consumer[.]"  15 U.S.C. §
1681b(a)(3)(F).

    The FCRA provides a cause of action against "[a]ny person
who willfully fails to comply" or who "is negligent in failing
to comply" with the FCRA's permissible-use requirements.  15
U.S.C. §§ 1681n(a), 1681o(a).  Said differently, to prevail on a
claim under the FCRA, a plaintiff must prove both that the
defendant used or obtained the plaintiff's credit report for an

impermissible purpose, see 15 U.S.C. § 1681b(f), and that the violation was either willful or negligent, 15 U.S.C. §§ 1681n, 1681o.

Defendant argues that dismissal is warranted if it had a "reasonable belief" that it had a permissible use for obtaining Plaintiff's consumer credit report.  Plaintiff adamantly opposes application of this reasonable belief standard, arguing it is inconsistent with the FCRA.  Defendant refers the Court to James v. Interstate Credit & Collection, Inc., No. 03-cv-1037, 2005 U.S. Dist. Lexis 15495, *11 (E.D. Pa. July 29, 2005) in support of its position.   In James, the Eastern District of Pennsylvania held that "[i]n evaluating whether the FCRA is violated, 'so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA.'"  James, 2005 U.S. Dist. LEXIS 15495, at *10 (quoting Korotki v. Attorney Servs. Corp., 931 F. Supp. 1269, 1276 (D. Md. 1996), aff'd, 131 F.3d 135 (4th Cir. 1997)).  Other courts have more recently questioned the suitability of the reasonable belief standard.  See Brown v. Vivint Solar, Inc., No. 8:18-cv-02838-SCB-JSS, 2020 U.S. Dist. LEXIS 49675, *12-13 ("The law is somewhat unsettled regarding whether the reasonable belief standard applies to lenders facing liability under 15 U.S.C. § 1681b(f), as opposed to credit

reporting agencies to which the FCRA specifically sets forth a reasonable belief standard in 15 U.S.C. § 1681b(a)(3).").

Whether Defendant's belief regarding its need for Plaintiff's consumer report was reasonable appears at least partially relevant to whether Defendant acted negligently or intentionally.  Indeed, the plain language of the FCRA "focuses on the intent of the party obtaining the [credit] report." Weitz v. Wagner, No. 07-1106, 2008 U.S. Dist. LEXIS 61112, *14 (E.D.N.Y. July 24, 2008), report and recommendation adopted, 2008 U.S. Dist. LEXIS 62729 (E.D.N.Y. Aug. 11, 2008).  Such is easily gleaned from the FCRA's plain language requiring a successful plaintiff prove that a user obtained a credit report negligently or in willful violation of the FCRA's permissible-purpose standard.  15 U.S.C. §§ 1681n(a), 1681o(a) (imposing liability upon "[a]ny person who willfully fails to comply" or who "is negligent in failing to comply" with an FCRA requirement) (emphasis added).

The Court views the reasonable belief standard in the context of this case not as a standalone or separate rule of law, but rather an alternative way of describing the intent requirement inherent in the FCRA.  In other words, if a defendant establishes that it acted reasonably to inquire into a plaintiff's credit worthiness, it would appear to follow that

16

the defendant did not act negligently or willfully to violate
the statute.  Absent establishment of negligence or willfulness,
a plaintiff could not succeed on their claim.  Therefore, guided
by the relevant FCRA provisions, the Court finds it must focus
at this juncture on whether Defendant (1) accessed Plaintiff's
consumer credit report without a permissible purpose and (2)
whether a jury could determine that Defendant did so negligently
or willfully.  Because Plaintiff has identified facts from which
a jury could find that Defendant did not have a permissible
purpose for obtaining Plaintiff's credit report, and because
Plaintiff has also identified facts from which a jury could
determine Defendant acted negligently or willfully, summary
judgment must be denied.

> 2. <u>Plaintiff Has Identified Evidence From Which A Jury
> Could Find Defendant Lacked A Permissible Purpose For
> Obtaining Plaintiff's Consumer Credit Report</u>

> i. <u>15 U.S.C. § 1681b(a)(3)(A)</u>

15 U.S.C. § 1681b(a)(3)(A) permits use of a consumer credit
report if the user "intends to use the information in connection
with a credit transaction involving the consumer on whom the
information is to be furnished and involving the extension of
credit to, or review or collection of an account of, the
consumer[.]" 15 U.S.C. § 1681b(a)(3)(A).  The Third Circuit has
recognized that "§ 1681b(a)(3)(A) authorizes access to a

consumer's credit report 'when the consumer applies for
credit[.]'"  Huertas v. Citigroup, Inc., 639 Fed. Appx. 798, 801
(3d Cir. 2016) (quoting Gelman v. State Farm Mut. Auto. Ins.
Co., 583 F.3d 187, 191 (3d Cir. 2009)).

     Defendant argues that, because it intended to use
Plaintiff's consumer credit report in connection with pre-
approving Plaintiff for credit, it had a permissible use under
15 U.S.C. § 1681b(a)(3)(A).  Plaintiff argues that Defendant's
intentions are not so clear.  Essentially, Plaintiff argues that
(1) Defendant's salesman, Chamberlain, forged a document
purporting to evince that Plaintiff applied for credit and (2)
if Chamberlain's knowledge is imputed to Defendant, Defendant's
intentions appear less noble.  Defendant counters that
Chamberlain's knowledge cannot be imputed to it.

     The parties clearly disagree about whether Chamberlain's
knowledge may be imputed to Defendant.  Therefore, the Court
must determine, as a legal matter, whether Chamberlain's
knowledge may be imputed to Defendant and the Court finds that,
under the facts identified by Plaintiff, Chamberlain's knowledge
may be properly imputed to Defendant.

     Defendant concedes that vicarious liability theories apply
in the FCRA context.  See (ECF No. 85 at 6) ("[Defendant] does
not claim . . . that agency theories can never apply in credit

18

pull cases."). Instead, Defendant contends "only that [Plaintiff] has not met, and cannot meet, his burden of proving vicarious liability in this case." (Id.). The parties vacillate between the concepts of imputation of knowledge and vicarious liability. While both concepts are related agency principles, they are nonetheless distinct. Certainly, knowledge may be imputed from an agent to a master without necessarily creating vicarious liability. The Court has attempted to parse the differences where relevant.

While it appears neither the Third Circuit nor a court in this District have yet opined on whether an employer can be held vicariously liable for actions of an employee or agent under the FCRA, a growing number of courts agree that traditional agency principles apply in the FCRA context, which may result in the creation of vicarious liability. See, e.g., Jones v. Federated Financial Reserve Corp., 144 F.3d 961, 966 (6th Cir. 1998) ("Failure to impose vicarious liability on a corporation . . . would allow it to escape liability for 'willful' or 'negligent' violations of the statute. Because a company . . . can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose"); Yohay v. City of Alexandria Employees

Credit Union, Inc., 827 F.2d 967, 973 (4th Cir. 1987) (holding
an employer liable for its agent's intentional acts where the
agent had apparent authority to obtain a credit report).  The
Third Circuit has cited Jones approvingly, suggesting its
approval of the application of traditional agency law principles
in the FCRA context.  See Barbato v. Greystone All., LLC, 916
F.3d 260, 269 (3d Cir.), cert. denied sub nom. Crown Asset Mgmt.
LLC v. Barbato, 140 S. Ct. 245, 205 L. Ed. 2d 129 (2019) (citing
Jones, 144 F.3d at 965).  More affirmatively, the Third Circuit
has explained that "when Congress creates a tort action, it
legislates against a legal background of ordinary tort-related
vicarious liability rules[.]"  Barbato, 916 F.3d at 269.

There seems to be no dispute that Chamberlain was
Defendant's agent when it visited with Plaintiff many years ago.
Under traditional agency law principles, an agent has a duty to
disclose material information to the principal, and the
principal is "deemed to have knowledge" of those material facts.
In re WL Homes, LLC, 534 Fed. Appx. 165, 169 (3d Cir. 2013)
(citation omitted).  In determining the legal relationship
between a principal and a third-party with whom the principal's
agent has interacted, "notice of a fact that an agent knows or
has reason to know is imputed to the principal if knowledge of
the fact is material to the agent's duties to the principal[.]"

Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 106
(3d Cir. 2009) (quoting Restatement (Third) of Agency § 5.03
(2006)) (emphasis removed).  To justify imputing an agent's
knowledge of facts to a master, the facts must be important or
significant to the agent's duties to the master.  Id. at 106-07
(emphasis removed).  Information is deemed material when the
"employee uses that knowledge in the performance of the
employee's duties to the employer."  Id.

    In this case, the completion of the PCCF appears material
to Chamberlain's job duties.  Indeed, Defendant argues, in part,
that it ran Plaintiff's credit based upon completion of that
form, and that its sales representatives are tasked with
obtaining prospective customers' signatures and completion of
the PCCF as a major part of their jobs.  While Defendant argues
that forging a PCCF would render Chamberlain's actions outside
the scope of his employment, the Court disagrees.  For example,
the Court of Appeals for the First Circuit has found, albeit
under Maine law, that the intentional tort of rape committed by
an inn worker may lead to vicarious liability where the worker
was (1) the defendant's agent, (2) was armed with information
only available through his employment role, (3) had access to
the room where the intentional tort occurred through his
employment role, and (4) used that access to commit the act.

Costos v. Coconut Island Corp., 137 F.3d 46, 50 (1st Cir. 1998).
Chamberlain had similar access points in this action.  A jury
could find that (1) Chamberlain was being held out to Plaintiff
as Defendant's agent or representative, (2) Chamberlain was
armed with information about Plaintiff available through
Chamberlain's relationship with Defendant (namely, information
Chamberlain may have uploaded to the PCCF without Plaintiff's
permission), (3) Chamberlain used that information to complete a
PCCF in Plaintiff's name, and (4) Chamberlain used his access to
that information to commit an intentional act harming Plaintiff.

        The Court finds Costos persuasive.  Therefore, the Court
concludes that the intentionality of Chamberlain's act does not
necessarily immunize Defendant from vicarious liability or
imputation of Chamberlain's knowledge.  Such would, as the Jones
court recognized, essentially leave victims of an agent's
actions without recourse for intentional acts committed while
under the employ of a master.  See Jones, 144 F.3d at 966.  Such
an outcome appears inconsistent with Congressional intent in
enacting the FCRA, namely, to protect consumers from
unauthorized access to consumer reports.  See Safeco Ins. Co. of
Am., 551 U.S. at 52, 127 S. Ct. at 2205–06.

        Defendant directs this Court to a number of cases it
suggests compel an alternative conclusion, the most factually

analogous of which is Kennedy v. Victoria's Secret Store, Inc., No. 03-2691, 2004 U.S. Dist. LEXIS 19525 (E.D. La. Sept. 29, 2004).  In Kennedy, the plaintiff visited a Victoria's Secret store to purchase goods.  The plaintiff attempted to purchase goods with her American Express card, but instead of charging the American Express card, the cashier surreptitiously opened a Victoria's Secret credit card in the plaintiff's name and charged her purchase to that account.  Id. at *1-2.  The plaintiff was not aware the account had been opened until she received the physical credit card and a statement in the mail. Id. at *3.  The plaintiff pursued an FCRA action alleging the defendant did not have a permissible purpose for obtaining her consumer report.  The defendant argued it had a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) because the report was obtained for purposes of extending the plaintiff credit.  The plaintiff, however, maintained she never applied for that line of credit.  In a single paragraph examining the vicarious liability issue, the Kennedy court determined that "the consumer report allegedly obtained by VS and WFNNB was obtained for the purposes of using the information to extend credit or to review or collect on an account.  Therefore, [the plaintiff's] claims under 15 U.S.C. § 1681b should be dismissed."  Id. at *9.

    While Defendant relies on Kennedy, the Kennedy court does

not appear to have thoroughly applied or analyzed the issue of
vicarious liability or imputed knowledge.  Therefore, the Court
finds it of only limited guidance.  If Kennedy was good law,
corporate entities could essentially escape FCRA liability by
hiding behind an agent's or employee's inappropriate actions;
such a conclusion appears contrary to the purpose of the FCRA,
which among other things, seeks to protect consumer privacy and
restrict improper use of consumer credit information.  See
Safeco Ins. Co. of Am., 551 U.S. at 52, 127 S. Ct. at 2205-06;
Jones, 144 F.3d at 966.  Additionally, such an outcome would, as
the Jones court recognized, essentially immunize employers from
liability for their employees' improper actions and would
significantly frustrate a victim's ability to enforce their
rights under the FCRA.  In balancing Jones and Kennedy, the
Court finds that Jones compels the proper result.

Defendant also argues it has policies against forging PCCFs
and informs its salespeople about the potential illegality of
violating those rules.  Because Plaintiff's allegations indicate
Chamberlain acted outside the scope of those polices, Defendant
argues that Chamberlain's actions should be deemed outside the
scope of his employment.  However, a companies' preventive
measures and polices are no defense to liability when its
employee intentionally acts in a manner that would violate the

FCRA.  Todd v. Target Corp., No. 10-cv-05598, 2012 WL 1080355, at *4 (N.D. Ill. Mar. 30, 2012).

For these reasons, the Court finds it may be appropriate to impute Chamberlain's knowledge to Defendant.  Finding as much, the Court leaves to the jury to determine (1) whether or not the PCCF was actually forged, (2) whether or not Chamberlain intentionally forged that document without consent, (3) whether such knowledge should be imputed to Defendant, and (4) whether that knowledge renders Defendant's actions negligently or willfully in violation of the FCRA.

> ii.  15 U.S.C. § 1681b(a)(3)(F)

As relevant to this action, 15 U.S.C. § 1681b(a)(3)(F) permits use of a consumer's credit report if the user "otherwise has a legitimate business need for the information" and if such use is in connection with a business transaction that is initiated by the consumer.

The parties dispute whether Plaintiff initiated a business transaction with Defendant and whether Defendant had a legitimate business need for Plaintiff's credit information. Plaintiff identifies evidence suggesting (1) Chamberlain and Plaintiff engaged in only a brief conversation in which Plaintiff agreed to receive additional marketing materials from Defendant and (2) Plaintiff never authorized Defendant to

conduct a credit inquiry.  On these facts, a jury may find there was never a "business transaction" initiated by Plaintiff.

"[A] request for general information about products and prices offered does not involve a business transaction initiated by the consumer."  Boone v. T-Mobile USA Inc., No. 17cv-378-KM-MAH, 2018 WL 588927, at *14 (D.N.J. Jan. 29, 2018) (quoting FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1 (Feb. 11, 1998)).  For example, a consumer who asks a car dealer to "test drive" a car, or asks questions about pricing and financing, "is not necessarily indicating an intent to purchase or lease a vehicle from that particular dealer." Id. (quoting FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1).  Obtaining a consumer's credit report based solely upon such early-stage inquires is inappropriate and violates the FCRA.  Id. (quoting FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1).

For example, in Boone, the plaintiff alleged he made a general inquiry with T-Mobile about the availability and cost of phone plans.  The plaintiff never signed any agreement and never agreed to purchase products or services from T-Mobile.  On those facts, the court in Boone found the plaintiff's actions did not amount to a business transaction initiated by the consumer.

Boone is both analogous and persuasive.  Like the plaintiff in Boone, Plaintiff has identified evidence from which a jury could find Defendant knew Plaintiff never authorized inquiry into his credit, never indicated a desire to purchase Defendant's products, and did nothing more than generally inquire about Defendant's services.  Such circumstances would not amount to initiation of a business transaction under the FCRA and would not permit Defendant to access Plaintiff's credit report.

Moreover, as the court in Boone explains, "[o]nly in those circumstances where it is clear both to the consumer and to the [seller] that the consumer is actually initiating the purchase [of a product]" may a seller have "obtain a report without written permission" Boone, 2018 WL 588927, at *14 (quoting FTC Advisory Opinion on the Fair Credit Reporting Act, 1998 WL 34323748, at *1).  Under Plaintiff's version of events, such was certainly not clear to Plaintiff.  As such, Defendant would require written authorization to obtain Plaintiff's credit report.  Plaintiff has identified evidence from which the jury could find Defendant knew he never provided such written authorization.  As such, summary judgment must be denied.

iii. <u>Plaintiff Can Establish Viable Injuries And May
Proceed With On His Damages Theory</u>

Plaintiff alleges he suffered emotional distress as a
result of Defendant's actions.  Defendant argues Plaintiff has
not sufficiently established that he suffered any actual damage,
requiring dismissal of his claim.  Plaintiff argues his
testimony – and the testimony of his family members – is
sufficient basis to submit the issue to a jury.  The Court
agrees with Plaintiff.

A plaintiff may recover actual, punitive, or statutory
damages for willful violations of the FCRA, but may recover only
actual damages for negligent violations.  15 U.S.C. § 1681o(a);
15 U.S.C. § 1681n(a); <u>Brown</u>, 2020 U.S. Dist. LEXIS 49675, at
*11.  Emotional distress damages are recoverable as actual
damages under the FCRA.  <u>Cortez v. Trans Union, LLC</u>, 617 F.3d
688, 719-20 (3d Cir. 2010).  The Third Circuit has held that
proof of such injury does not require "corroborating testimony
or medical or psychological evidence in support of the damage
award."  <u>Id.</u> at 720 (citation omitted).  Such corroboration, our
Circuit has held, "goes only to the weight of evidence of
injury, not the existence of it."  <u>Id.</u>  Therefore, if a jury
accepts testimony of a plaintiff that establishes an injury
without corroboration, the plaintiff should be allowed to
recover under the FCRA.  <u>Id.</u>  The fact that a plaintiff's

28

injuries relate to the stress and anxiety caused by a
defendant's conduct does not change that.  Indeed, "this is
precisely the kind of injury that Congress must have known would
result from violations of the FCRA."  Id.

Plaintiff has identified evidence, including his testimony
and the testimony of his family, on which a jury could find he
suffered emotional distress from Defendant's actions.  As such,
the issue must be submitted to the jury.  Additionally, because
there remains a live claim for willful FCRA violations,
Plaintiff may proceed on punitive and statutory damages
allowable for a willful violation.

<u>**CONCLUSION**</u>

For the reasons expressed above, (1) Defendant's motion to
strike certain supplemental facts submitted by Plaintiff in
opposition to Defendant's motion for summary judgment (ECF No.
87) will be granted; (2) Defendant's motion for summary judgment
(ECF No. 75) will be denied; and (3) as expressed in footnote 2,
the parties shall have fourteen (14) days to file any relevant
motions to seal.

An appropriate Order will be entered.


Date:  May 17, 2020            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.


29